I am here on behalf of the appellant, Wendy Kelley. I've reserved five minutes of my argument time for rebuttal today. Well, you can watch the clock and stop when you wish. Thank you, Your Honor. We are here today because the district court erred by holding that Mr. Burks was entitled to equitable tolling for the untimely filing of his federal habeas petition. Under AEDPA, there is a one-year statute of limitations for the filing of a federal habeas petition, and Mr. Burks filed his petition long after that. Judgment was entered in his case in March of 2008. He did not file a notice of appeal from the judgment, and therefore, under Arkansas law, his conviction became final in April of 2008. That meant the statute of limitations under AEDPA began running, and it ran out with no filing. It expired in April of 2009. Mr. Burks, however, did not file his federal habeas petition, however, until April of 2014, more than five years after the statute of limitations ran. Mr. Burks has never claimed to be entitled to any kind of statutory tolling, and therefore, if he's entitled to tolling of the statute of limitations, it must be because he is entitled to equitable tolling. The burden was on him to show his right to equitable tolling. Well, now, he's halfway home because you agree there's an exceptional circumstance in not appointing the counsel, find it in the Constitution, right? No, Your Honor, I do not agree. I thought the second half you agreed that there was a circumstance, extraordinary circumstance beyond his control. I did not agree to that. Oh, is that the lower court that said that? The lower courts. The district court concluded. We'll assume that's right for a second. Talk about the first part of the test, reasonable diligence. Mr. Burks did not act with reasonable diligence because he failed to do anything for more than five years. At the time that when he went in front of the circuit court, the state circuit court, the special judge there relieved his attorney, Mark Leverett, and told him that the public defender was not appointed, that he had to pursue an appeal himself, and that he could ask for help if he wanted it. But in that same transcript, before that, there's discussion where even the lawyers themselves aren't clear what's going on, when it happens, when it doesn't. Is it realistic to sort of say, oh, well, the one line that he should have walked away with was you can proceed with your own appeal? Doesn't that sort of ignore the conversation that happened before then? No, Your Honor, because the reason they're there is to resolve that. For example, we're here today. We're discussing a bunch of different issues, and we're going to come to a resolution at the end of it. They were there to decide whether or not Mr. Leverett was going to be relieved, whether or not Mr. Burks was indigent. And it was the conclusion of that discussion that, yes, Mr. Burks should have realized, and the court was very clear. Whatever confusion may have been discussed at the beginning, it was resolved by the end, at the end of the hearing. Do you think it adds any confusion when the court says, so declare some indigent, and you can proceed with your own appeal and ask for assistance, I suppose, if you need to? I think the I suppose is directed towards if you need to, if you think you need help. But there is no ambiguity whatsoever in telling Mr. Burks you need to proceed with an appeal by yourself. And Mr. Burks, in fact, he even testified that he proceeded by himself. Right. Yes, Your Honor. So he obviously, either he understood it or he took the initiative without understanding it. But he testified that he claimed he filed an appeal, although there's no record of it as I understand it. Correct, Your Honor. He stated at the hearing held in February, I'm sorry, in January of 2014, he said that he proceeded with an appeal himself. And also, in his federal habeas petition, he averred that he had pursued an appeal himself. Did he date that? I remember the claim, but I don't remember the date. Did he put a date on when he claimed he appealed? No, Your Honor, he did not. Even roughly? That is not my recollection. He merely said, I pursued an appeal. Well, as you know, in May, he asked for, and that is on the record, he filed a motion for portions of the record. That was denied, by the way, as I understand. May 29th of 2008. Is that correct? In May of 2008, he requested a transcript. In order to file a motion, he said to vacate his conviction on the ground, I believe, of ineffective assistance of counsel. Right. And that was denied, and he admits that he received notice of that ruling. The circuit court denied it in July of 2008. What I'm trying to say, since you know that, do you know it was before, after, during, or around that he was claiming he filed the appeal? We don't know when he. Well, could you tell by the structure of the affidavit? Of the affidavit? Yeah, you said he filed an affidavit in which he claimed he appealed? No, I'm sorry, Your Honor. I thought you said that. I've said he averred in his habeas petition. I beg your pardon, that was not an affidavit. Okay, can you tell by the structure of the habeas petition, whether it's before or after this portions of record deal? No. You can't tell? No. Okay, thank you. We cannot tell. Mr. Burks was not diligent. He did nothing for five years to monitor an appeal. He did not, even if his motion for a transcript were construed as a motion for a transcript to pursue an appeal, he never appealed the denial of that, which he admits that he had notice of. He didn't try to contact the Arkansas Supreme Court, the Court of Appeals, the clerk's office. There's no evidence that he tried to do. In late 13, he did. Right. And then in late 13, when he was told that no appeal had ever been lodged, he still did nothing to pursue his federal habeas rights. And that's the issue that's in front of the court today. Gordon v. Arkansas clearly holds that what's at issue for purposes of due diligence is not the pursuit of state post-conviction remedies or even a state appeal, but the pursuit of your federal habeas rights. Even if Mr. Burks for some reason thought a direct appeal was pending, which the state disputes and denies, he was clearly told by the criminal justice coordinator in December of 2013 that no state appeal had ever been filed. Then if he was intending to pursue his federal habeas rights, he should have filed a federal habeas petition then. And now Mr. Rosenzweig repeatedly states that it would be ludicrous to expect Mr. Burks to file a protective federal habeas petition. The law from the United States Supreme Court and, in fact, this court is that petitioners do, in fact, have such an obligation. If they have a question about whether or not they've preserved their state remedies or exhausted their state remedies and to prevent them from being caught in a Catch-22, a diligent petitioner will proceed to the federal court. He claimed he did two things that there's no record of. He claimed he appealed, and what was the other thing he claimed he did? He claimed he filed a state habeas petition. State habeas, thank you. And he also claimed that he filed a Rule 37 petition, which is the generic post-conviction relief in Arkansas. There is no record of his ever having done so. So there are three things that he claims that there's no record of, an appeal, state habeas, and 37? He says he filed an appeal, a Rule 37, and a state habeas petition. Three separate things because, as you know, they sometimes confuse two or three of those. Go ahead. What's your understanding of the alleged extraordinary circumstance here? What do you think it is that the district court said? extraordinary circumstance was the lack of a counsel direct appeal. But that is not an extraordinary circumstance under Holland v. Florida because it did not stand in his way to prevent the timely filing of his federal habeas petition. His conviction need only be final in order for him to pursue habeas relief, and the lack of an appeal did not prevent him from filing. And, in fact, he's never had an appeal, and he filed his habeas petition. So there is no extraordinary circumstance, but even if there were, Mr. Burks did not act diligently. I might add, Judgment, in your questions about what he filed in state court, Mr. Rosenzweig has never claimed that Mr. Burks filed any of those pleadings. And, in fact, in his briefing he says that the efforts in 2008 to obtain a transcript and for discovery and then his efforts in 2013 satisfied his diligence efforts. If there are no further questions at this time, I reserve the remainder of my time for rebuttal. All right. You may. Mr. Rosenzweig, we'll hear from you. Thank you. Thank you, Senator. Holland v. Florida counsels that the court should not put itself in a procedural straitjacket with regard to equitable tolling. And this is an extraordinary case in a lot of ways, and extraordinary circumstances are presented here. Most equitable tolling cases seem to fall, at least the ones I've read, fall in one or two categories. Either it's an attorney mix-up of some fashion, or it is a pro se litigant messes something up in a proceeding where there's no entitlement to counsel. And here everything in this case flows from the original sin of the just flagrant, absolute denial of constitutional guarantee of the right to counsel based upon the finding of a special judge who didn't know what she was talking about. So how does that affect our diligence analysis? If you've got a lawyer, are you more expected to sort of sit back and say, well, my lawyer's handling it? Or if you don't have a lawyer, is it somehow the diligence bar lowered because you don't have a lawyer helping you? How does that cut? Well, the question is, when you have a constitutional right, I mean, that's our position. When there's a constitutional right first, Mr. Burks thinks of, I can tell you this since I know him, thinks of anything that is sent into a court is an appeal. And what he is referring to, those two motions that he filed shortly thereafter, that was part of an appeal. I mean, essentially he was relying on fellow inmates or people at the law. What did he call it? You said he considered it an appeal. What did he call it? Well, I mean, that's what he, I think it's reasonable to assume you have an uncounseled person, indigent, incarcerated person. And those things which he sent in, which are in the record, they're part of the state's exhibits, were documents which he thought were an appeal. Now, they weren't, but he thought they were, but he presented them with regard to the- Well, what did he file other than a motion for a transcript? Well, he filed a motion for discovery. That's what he filed. I mean, that's in there. When was that filed? After his trial. Is that the May 29, 2008? Yes.  So it's titled motion for discovery? It's titled motion for discovery. Now, I can informally speculate on the habeas that he- I couldn't find a habeas either, but I think I know what happened. He was confined in Jefferson County, Arkansas, which is where the prison is. And under Arkansas law, you have to file the habeas in the county of your incarceration. And the Jefferson County Circuit Clerk's Office is a black hole. It's been a mess for many years, as well as mail service there. But I think that's what happened. But I don't have any proof that he filed it. That's my speculation as to what happened. But what we have here is someone who, again, look at his particular circumstances. He's filed some stuff. It's been denied. He has been denied his constitutional right to counsel and the guarantee of counsel. Someone's told him, well, it takes three to five years or so, and just sort of figures that's what it is. I wish the facts were different, but those aren't the facts. But under the particular circumstances that we're facing here, we submit that's sufficient. Another way you could. Well, if we say that you're reasonably diligent if you rely on some guy at the law library at the jail for an estimate on timing, isn't that going to create a pretty gaping exception to your diligence requirement? Because of the factual circumstances in which it is presented, when has anyone denied counsel on a direct appeal? I mean, that has got to be incredibly rare, if at all. I mean, when an indigent person being denied counsel on direct appeal, I think this is a sui generis type situation that calls for. You mean it's reasonable to rely on a guy in the law library when you're talking about a person who didn't have a lawyer on direct appeal, but not in other cases? At the time he was relying, he had a right to counsel of which he had been deprived by an erroneous ruling of a special judge. That's the circumstance. Now, if the judge had told him not to file an appeal, that's like several cases from several other circuits that we were able to find. And if a court tells you something like that, that is extraordinary, you're reasonably diligent in relying on it, you get equitable tolling. There are a few equitable tolling cases that win, and those are ones that win. But here the judge didn't tell him not to file it, the judge kind of told him to file it. Well, but the judge told him he wasn't entitled to a lawyer when he clearly was, and relieved the lawyer he had in gross violation of not only case law, but specific rule. And so, again... What's that got to do with why he is allowed to take five years before he takes any action? Well, because he didn't have anyone that he could, he was deprived of counsel to which he was entitled who could have told him something differently. But he ended up acting five years later on his own and triggering this process. He was able to talk to someone else in the barracks or in the law library, and eventually, how's my appeal coming? And finds out that no appeal is there. And that's when he started the process. He went to state court. The new judge there, Judge Wright, had a hearing and said, I don't think I have jurisdiction, but I definitely recommend that the predecessor judge did wrong. And then the Arkansas Supreme Court denied him relief without an opinion. I think another way to look at this is as a form of attorney abandonment. It's a judicially ordained and sanctioned attorney abandonment, but I think that's an alternative way of looking at it. So what's the most factually analogous case with attorney abandonment, even though it's hard to see abandonment where you've got none? Go ahead. Well, Mr. Leverett was allowed by the judge. No, I'm talking about a case. Do you know a case? No, sorry, no. Mr. Leverett was allowed, was illegally, improperly, erroneously, whatever adjective or adverb you want to use, allowed to abandon his client. Mr. Leverett got judicial approval for it, but it was abandonment because it was a clear violation of Arkansas law. And there's no dispute on that, that it was a clear violation of Arkansas law. The Evans case, the Rule 16. Now, nobody to this point has discussed this in terms of abandonment, right? Well, it... I mean, the lower courts, you know. No, sir, it's not. I think that's an alternative way of looking at it. In other words, this isn't someone who just, like in the Holland case, the guy just sort of ran off and didn't respond or anything else like that. He went to court and got permission to abandon. But it was nonetheless another way, I mean, another perspective you have on it is you can look at it as a type of abandonment under the particular circumstances. So if you had to sum up why you think your client exercised sufficient diligence, how would you sum it up in, I'll give you two sentences. Because sufficient diligence doesn't require as much when you are deprived of your right to counsel than it would if you had counsel or if you're in a stage where you're not entitled to counsel. That's... Again, Holland says you don't put yourself in a procedural straitjacket. You look at the individual cases, and this is an extraordinarily almost unique, if not unique, case under the particular circumstances. Well, Holland was abandoned by counsel. Holland wasn't abandoned, but he had a lawyer. A court had appointed someone. He had a lawyer. This guy didn't, you know, at this, during the time that the clock is running, this guy had no lawyer. He should have had a lawyer, but he didn't. That's the, I mean, that's what we have here. And it's, I mean, it's, I mean, the state agrees that he was entitled to a lawyer for a direct appeal. There's no dispute on that. They can see that in passing in various parts in the brief. He was entitled to a lawyer. He never got one, and he was sitting there alone, uncounseled, semi-literate, in prison, deprived of counsel, convicted of a heinous offense, thinks something's going on, sends some stuff up, never hears back. And finally, after the amount of time that he's told is enough, or that he should have an appeal, find out there was never an appeal, and that's what happened. Clearly extraordinary circumstances. Now, this idea of protective habeas, you know, I don't think that the court should be, under the particular circumstances of this case, when you want someone to go to state court first, under any circumstance, before he goes to the door of the federal courthouse, and he was, had stuff, you know, in state court, you've got to go to state court first. And the idea of a protective habeas under these circumstances is, I submit, it is sort of ludicrous. But... Boy, the United States Supreme Court likes protective habeas, so be careful. I'm not following your argument. Well, sir, what I'm trying to say, under the particular circumstances of this case, when a person is without counsel at a time where he's supposed to have counsel, the protective habeas, according to the state, should have been filed within one year after the finality. But even under Arkansas law, he had 18 months to seek a belated appeal, had an 18-month rule, so his time for filing habeas would have expired even though the 18 months could have run. But the 18 months on the belated appeal assumes that, nonetheless, assumes that you have counsel. And he had indicated, there's no question in the record, that he indicated, I want to appeal. His lawyer, Leverett, says he wants to appeal, but he doesn't have the money to pay for it. Well, I don't mean to belabor this, but how important is the fact that he didn't have counsel in your diligence analysis? In other words, we've got a few filings on his part. Could it have been no filings on his part until he found out later? I realize that's not the facts of this case, but it's a minimal, minimal number of steps he took. And so you seem to be putting a lot of weight on the fact that he didn't have counsel. Well, yes. Well, he filed something. That shows he continued to want to pursue his claims. He files a motion for a transcript. He files a motion for discovery. And he filed those pro se. Those were filed in, what, April or May? Shortly after he was denied, after Mr. Leverett was let off the case.  And when did he get imprisoned at Varner? In 08. Well, he was convicted. They had the hearing where he did not, where he was denied counsel. Shortly thereafter, he's been in prison ever since in different units of the prison. Because he testified that when he was at Varner, he filed an appeal. Is that referring to the motion for a transcript? My guess is that's when he sent off those two documents and he would have been at Varner. If, in fact, he's accurate in his recollection. But he said he never heard anything. He knows that the transcript motion was denied. So I don't understand what he's referring to when he says he filed an appeal and never heard anything. Well, I'm not totally sure. He couldn't find anything that was filed other than the two motions. With it in Pulaski County, the Pulaski County, whatever, if he sent something in, it didn't, you know, through the prison, it got mailed out, it didn't make it to the Pulaski County file. As I say, my guess is that he did send something to Jefferson County and Jefferson County just round-filed it, threw it away. Why do you guess that? Because I've dealt with Jefferson County so much, that's my guess. There is nothing in Jefferson County. That was the county in which he was prosecuted? The county in which he was incarcerated at one time. Oh, now he was prosecuted in Pulaski. He was prosecuted in Pulaski. But under Arkansas law, a habeas corpus is filed in the county of where you are, where your body is. And that's where Varner is? Varner is actually in Lincoln County, but Tucker, which is a big, and Tucker, maximum security, are in Jefferson County. Well, I thought you said he was at Varner. No, he's been moved around. My understanding, he's been moved around. In other words, I guess it's outside the records. He told me he sent it to Jefferson County, and I went and looked in Jefferson County. I didn't see it, but the fact that I didn't see it doesn't mean anything. He told you that he testified that he sent it from Varner, which is in Lincoln. What did you say, in Lincoln County? Varner's in Lincoln County, yes, sir. All right. I think your time has expired. All right, my time has expired. Thank you for your argument, and we'll hear rebuttal now. Thank you, Your Honor. First, I owe an apology to the court, specifically when addressing Judge Benton's question about when Mr. Burks claims to have filed these. And a state habeas in July of 2008. So I apologize, Your Honor, for not recalling that fact in the record. Thank you, because I didn't know. Well, now, that's July of 08. That wouldn't be the same as these other documents, because they were filed in May. Yes, they were filed in May of 2008. His statement there is further evidence of his lack of diligence, because if he did, in fact, file those and made no inquiries whatsoever as to their status until late 2013, that is evidence of lack of diligence. I was surprised to hear Mr. Rosenzweig say this morning that this case is like a case where a client has been abandoned by an attorney, because this circuit's case law is very clear that a habeas petitioner cannot continue to rely, be thought to have reasonably relied on counsel when counsel is uncommunicative, counsel is not responding to correspondence and has not said anything about the case. Angelo Lopez, Williams, and Muhammad all make clear that if the client is not hearing from the attorney, the client can no longer reasonably assume that an appeal is proceeding. So to the extent that Mr. Rosenzweig thinks those cases are analogous, they point to rejecting his claim of entitlement to equitable tolling. The district court here and Mr. Burks have conflated his ground for federal habeas relief with the concept of an extraordinary circumstance. Nothing about the lack of counsel to pursue a direct appeal interfered with Mr. Burks' ability to file a federal habeas petition, and that is the question that's before the court. It's did something, did an extraordinary circumstance happen that prevented timely filing? And as Judge Benton, when you were asking Mr. Rosenzweig questions about whether or not a judicial action can warrant is an extraordinary circumstance, that's when the judicial action goes to the federal filing deadline, and that is not the case here. The judicial mistake that's alleged here has to do with the availability of counsel to pursue a direct appeal. While unfortunate that Mr. Burks did not receive appointed counsel to pursue an appeal under the specific facts of this case, which Mr. Rosenzweig repeatedly states is important, he was told that the onus and the burden was on him. And had he followed that advice, he could have gotten a belated appeal in the Arkansas Supreme Court, and presumably we would not be here today. If there are no further questions, the state of Arkansas respectfully requests that the judgment of the district court be reversed, that this court hold that Mr. Burks is not entitled to equitable tolling, and that his federal habeas petition be dismissed. Thank you. All right. Thank you for your argument. Thank you, Mr. Rosenzweig, for accepting the appointment under the Criminal Justice Act. The court appreciates it, and the case is submitted. We'll file an opinion in due course.